# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

### No. 17-142V

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                              *
MICHAEL HOWELLS,                              *
                                              *
                    Petitioner,               *
                                              *
v.                                            *
                                              *
SECRETARY OF HEALTH AND                       *
HUMAN SERVICES,                               *
                                              *
                    Respondent.               *
                                              *
* * * * * * * * * * * * * * * * * * * * * * * *
```

UNPUBLISHED

Special Master Katherine E. Oler

Filed: April 20, 2023

Interim Attorneys' Fees and Costs

*Anne Carrion Toale*, Maglio Christopher & Toale, Sarasota, FL, for Petitioner
*Debra A. Begley*, U.S. Department of Justice, Washington, DC, for Respondent

## DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On January 30, 2017, Michael Howells ("Petitioner") filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("the Vaccine Program").[2] Pet., ECF No. 1. Petitioner alleges that he developed transverse myelitis ("TM") "and/or other injuries" as a result of the influenza ("flu") and PCV vaccines he received on December 14, 2015. Pet. at 1.

Petitioner filed a Motion for Interim Attorneys' Fees and Costs on August 24, 2022, requesting a total of $152,622.30. ECF No. 97 at 1 (hereinafter "Fees Application" or "Fees App."). Respondent filed a response (hereinafter "Fees Response" or "Fees Resp.") on November 14, 2022, deferring to me as to whether Petitioner has met the legal standard for an award of interim

---

[1] Because this Decision contains a reasoned explanation for the action in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

attorneys' fees and costs. Fees Resp. at 2, ECF No. 99. If I determine that an award of interim fees and costs is appropriate, Respondent "is satisfied the other statutory requirements for an award of attorneys' fees and costs are met in this case." *Id.* at 2. Petitioner did not file a reply brief.

I hereby **GRANT IN PART** Petitioner's application and award a total of **$140,947.85** in interim attorneys' fees and costs.

## I.   Legal Standard

### A.  Interim Attorneys' Fees and Costs

The Federal Circuit has held that an award of interim attorneys' fees and costs is permissible under the Vaccine Act. *Shaw v. Sec'y of Health & Hum. Servs.,* 609 F.3d 1372 (Fed. Cir. 2010); *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343 (Fed. Cir. 2008). In *Cloer*, the Federal Circuit noted that "Congress [has] made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act." *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1361-62 (Fed. Cir. 2012).

In *Avera,* the Federal Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352. Likewise, in *Shaw,* the Federal Circuit held that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375. *Avera* did not, however, define when interim fees are appropriate; rather, it has been interpreted to allow special masters discretion. *See Avera*, 515 F.3d; *Kirk v. Sec'y of Health & Hum. Servs.*, No. 08-241V, 2009 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009); *Bear v. Sec'y of Health & Hum. Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013). Even though it has been argued that a petitioner must meet the three *Avera* criteria -- protracted proceedings, costly expert testimony, and undue hardship -- special masters have instead treated these criteria as possible factors in a flexible balancing test. *Avera*, 515 F.3d at 1352; *see Al-Uffi v. Sec'y of Health & Hum. Servs.*, No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).

A petitioner is eligible for an interim award of reasonable attorneys' fees and costs if the special master finds that a petitioner has brought his petition in good faith and with a reasonable basis. §15(e)(1); *Avera*, 515 F.3d at 1352; *Shaw*, 609 F.3d at 1372; *Woods v. Sec'y of Health & Hum. Servs*, 105 Fed. Cl. 148 (2012), at 154; *Friedman v. Sec'y of Health & Hum. Servs.*, 94 Fed. Cl. 323, 334 (2010); *Doe 21 v. Sec'y of Health & Hum. Servs.*, 89 Fed. Cl. 661, 668 (2009); *Bear*, 2013 WL 691963, at *5; *Lumsden v. Sec'y of Health & Hum. Servs.*, No. 97-588V, 2012 WL 1450520, at *4 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by a petitioner's counsel. *Kirk*, 2009 WL 775396, at *2. Referring to *Avera*, former Chief Special Master Golkiewicz in *Kirk* found that "the general principle underlying an award of interim fees [is] clear: avoid working a substantial financial hardship on petitioners and their counsel." *Id.*

**B.  Good Faith**

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Such a requirement is a "subjective standard that focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

**C.  Reasonable Basis**

Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in his claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Hum. Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderance required to ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id.* at 286. The Court in *Chuisano* found that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 2019-1596, 971 F.3d 1337, 1346 (Fed. Cir. 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis.").

Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity alone "fails to establish a reasonable basis for a vaccine claim." *Chuisano*, 116 Fed. Cl. at 291.

The Federal Circuit has stated that reasonable basis "is an objective inquiry" and concluded that "counsel may not use [an] impending statute of limitations deadline to establish a reasonable

basis for [appellant's] claim." *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017). Further, an impending statute of limitations should not even be one of several factors the special master considers in her reasonable basis analysis. "[T]he Federal Circuit forbade, altogether, the consideration of statutory limitations deadlines—and all conduct of counsel—in determining whether there was a reasonable basis for a claim." *Amankwaa v. Sec'y of Health & Hum. Servs.*, 138 Fed. Cl. 282, 289 (2018).

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims. *See Waterman v. Sec'y of Health & Hum. Servs.,* 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury).

When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

## II.   Discussion

### A.   Undue Financial Hardship

The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by petitioner's counsel. *Kirk*, 2013 WL 775396, at *2 (finding "the general principle underlying an award of interim fees was clear: avoid working a substantial financial hardship on petitioners and their counsel."). In this case, Petitioner's attorney has been working on this case since March 2016. Ex. 85 at 1. Additionally,  Petitioner has retained two experts at a substantial cost. Ex. 86 at 1-4 (showing that Petitioner's expert, Dr. Pachner, has billed a total of $25,033.00, and Petitioner's treating physician, Dr. Zubkov has billed $2,950.00 in this case). This matter is scheduled for an entitlement hearing in February 2024. The Federal Circuit has noted that interim fees "are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." *Avera*, 515 F.3d at 1352 (Fed. Cir. 2008).

I also note that the COVID-19 pandemic has had a significant impact on the United States economy and such impact has been recognized by this court. *See Monge-Landry v. Sec'y of Health & Hum. Servs*, No. 14-853V, 2020 WL 4219821 *5 (Fed. Cl. Spec. Mstr. Jun. 30, 2020)

(recognizing the COVID-19 pandemic's continued disruption of the airline industry in its calculation of appropriate interim fees).

Given these unprecedented economic circumstances, and the time already spent litigating this case, I find that the Petitioner would suffer undue hardship in the absence of an award of interim attorneys' fees and costs.

### B.  Good Faith and Reasonable Basis

Respondent has not raised any specific objection to the good faith or reasonable basis for this claim and leaves such a determination to my discretion. *See* Fees Resp. at 2-3. I find that the petition was filed in good faith.

With regard to reasonable basis, Petitioner submitted seven expert reports. Dr. Zubkov, board certified in neurology, vascular neurology, and neurocritical care, has submitted two expert reports in this case. Ex. 25 at 1-2; *see also* Exs. 24, 64. Dr. Pachner, who board certified in internal medicine and neurology,[3] has submitted five reports in this case. *See* Exs. 28, 62, 63, 78, 89. Dr. Zubkov, Petitioner's treating physician, has opined that "it is my firm belief that [Petitioner] had autoimmune transverse myelitis of the cervical spinal cord secondary to reaction to flu shot. His multiple strokes and diabetes are a separate issue and they did not contribute to initial injury to spinal cord." Ex. 24 at 4. Dr. Pachner has similarly proffered his opinion that Petitioner's spinal cord injury was from acute transverse myelitis as a direct consequence of his vaccinations on December 14, 2015. *See* Ex. 28 at 12. Petitioner's onset, on January 9, 2016, was 26 days from his December 14, 2015 vaccinations, which is considered "within the expected period after antigenic challenge for the occurrence of first symptoms of post-vaccination ATM." *Id.*

This constitutes sufficient evidence to establish a reasonable basis for the claim. As there is no other reason to deny an award of interim attorneys' fees and costs, I will award Petitioner's reasonable fees and costs in this instance.

### C.  Attorneys' Fees

Petitioner requests a total of $119,606.90 in attorneys' fees.  Fees App. at 1.

#### 1. Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

---

[3]  *See*   Dartmouth Hitchcock Medical Center, Andrew R. Pachner, https://www.dartmouth-hitchcock.org/findaprovider/provider/1295/Andrew-R-Pachner (last accessed April 12, 2023).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[4]

Petitioner's counsel, Ms. Anne Toale, requests a rate of $402.00 per hour for work performed in 2018; $420.00 per hour for work performed in 2019; $445.00 per hour for work performed in 2020; $475.00 per hour for work performed in 2021; and $500.00 per hour for work performed in 2022. Ms. Toale also requests the following hourly rate for her colleagues: Mr. Altom Maglio, $362.00 per hour for work performed in 2017, and $381.00 per hour for work performed in 2018; Ms. Amber Wilson, $290.00 per hour for work performed in 2017, $308.00 per hour for work performed in 2018, and $323.00 per hour for work performed in 2019; and Ms. Diana Stadelnikas, $359.00 per hour for work performed in 2016, and $490.00 per hour for work performed in 2022.

Lastly, Ms. Toale requests rates ranging from $105.00 to $170.00 per hour for paralegal work performed between 2016 and 2022. Fees App., Ex. 85 at 70-71.

This request is consistent with what I and other special masters have previously awarded Ms. Toale and her associates at the Maglio law firm. *See, e.g., Thomas Sec'y of Health & Hum. Servs.*, No. 18-1948V, 2023 WL 2155057 (Feb. 22, 2023); *Morrison v. Sec'y of Health & Hum. Servs.*, No. 18-386V, 2023 WL 1873254 (Fed. Cl. Spec. Mstr. Jan. 26, 2023); *Scheffler v. Sec'y of Health & Hum. Servs.*, No. 19-260V, 2022 WL 16580270 (Fed. Cl. Spec. Mstr. Oct. 3, 2022); *Turkson v. Sec'y of Health & Hum. Servs.*, No. 18-690V, 2022 WL 10075563 (Fed. Cl. Spec. Mstr. Sep. 28, 2022); *M.D. by next friend Dilascio v. Sec'y of Health & Hum. Servs.*, No. 10-611V, 2022 WL 3134356 (Fed. Cl. Spec. Mstr. July 11, 2022); *Correa v. Sec'y of Health & Hum. Servs.*, No. 19-592V, 2022 WL 2222485 (Fed. Cl. Spec. Mstr. May 24, 2022). Accordingly, I find the requested rates are reasonable and that no adjustment is warranted.

2. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion

---

[4] The 2018 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202018.pdf.

The 2019 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202019.pdf.

The 2020 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202020.PPI_OL.pdf

The 2021 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2021-PPI-OL.pdf

The 2022 Fee Schedule can be accessed at: https://www.uscfc.uscourts.gov/sites/default/files/Attorneys%27-Forum-Rate-Fee-Schedule-2022-%28Final%29.pdf.

The hourly rates contained within the schedules are updated from the decision in McCulloch, 2015 WL 5634323.

to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). Petitioner bears the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1993). However, special masters may reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 318 (Fed. Cl. 2008), *aff'd* No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011). Special masters may look to their experience and judgment to reduce an award of fees and costs to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993). It is within a special master's discretion to instead make a global reduction to the total amount of fees requested. *See Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("special masters have wide latitude in determining the reasonableness of both attorneys' fees and costs"); *Hocraffer v. Sec'y of Health & Hum. Servs.*, No. 99-533V, 2011 WL 3705153 (Fed. Cl. Spec. Mstr. July 25, 2011), mot. for rev. denied, 2011 WL 6292218, at *13 (Fed. Cl. 2011) (denying review of the special master's decision and endorsing "a global – rather than line-by-line – approach to determine the reasonable number of hours expended in this case").

a. *Clerical and Administrative Time*

While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26. It is well-established that billing for administrative and clerical tasks is not permitted in the Vaccine Program. *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989).

The invoice for MCT includes examples of clerical and administrative tasks and includes a large number of entries regarding paralegals' efforts to obtain Petitioner's medical records from his various providers. Examples include (but are not limited to):

- May 10, 2016 (0.3 hours): "Review client's providers. Telephone conference with Bethesda Hospital to obtain record request procedure. Create detailed note to file. Draft correspondence requesting medical records. Update deadlines and file notes.
- August 24, 2016 (0.3 hours): "Draft rush correspondence to University of Minnesota Health Clinics and Surgery Center-East Bank requesting medical records. Update

deadlines and notes to file"

- December 14, 2016 (0.2 hours): "Review correspondence from University of Minnesota Medical Center Fairview regarding request for partial records due to incomplete transmission of original correspondence. Redraft request ad update notes to file."
- December 15, 2016 (0.2 hours): "Analyze medical records from UMMC Fairview for completeness and prepare for filing"
- April 7, 2017 (0.2 hours): "Review voicemail from UMMC release of information regarding status of fee documentation for subpoenaed records. Draft email confirming status, and update notes to file
- April 17, 2017 (0.2 hours): Follow up with provider University of Minnesota medical center & surgery center for help in regards to medical records"
- September 19, 2017 (0.1 hours): "Update case costs regarding mileage reimbursement"

The gathering of medical records, performed by 14 of 18 paralegals who worked on this case, totaled approximately 90 hours. I acknowledge that some medical providers required subpoenas before they would provide records, and that this added time to the normal record gathering process. However, the four years (90 hours of time) it took to file all of Petitioner's relevant medical records in this case (from May 2016 to May 2020), in my experience, is excessive. My colleagues and I have previously advised MCT that attorneys' fees for clerical, administrative tasks, and excessive time spent collecting medical records are not reimbursable in the Program, and we have reduced their requested attorneys' fees accordingly. *See, e.g.*, *Morrison v. Sec'y of Health & Hum. Servs.*, No. 18-386V, 2023 WL 1873254, at *7 (Fed. Cl. Spec. Mstr. Feb. 10, 2023) (deducting 20.9 hours for administrative and clerical tasks); *Scheffler v. Sec'y of Health & Hum. Servs.*, No. 19-260V, 2022 WL 16580270 (Fed. Cl. Spec. Mstr. Oct. 3, 2022) (applying a deduction of $1,500.00 for excessive hours collecting medical records); *Blender v. Sec'y of Health & Hum. Servs.*, No. 16-1308V, 2020 WL 5090439, at *3 (Fed. Cl. Spec. Mstr. Aug. 5, 2020) (reducing the requested attorneys' fees by 5% for administrative and clerical tasks and leaving tasks blank); *Reed v. Sec'y of Health & Hum. Servs.*, No. 09-650V, 2019 WL 2500417, at *4 (Fed. Cl. Spec. Mstr. May 21, 2019) (reducing the requested attorneys' fees by 5% for administrative and clerical tasks). Because these tasks were mostly completed by paralegals, I shall apply a 5% reduction to Petitioner's attorneys' fees.

Accordingly, I find that a reduction in requested attorneys' fees of $5,980.35 is warranted.

Total attorneys' fees to be awarded: **$113,626.55**

**D. Reasonable Costs**

Petitioner requests a total of $33,015.40 in costs, which includes obtaining medical records and medical literature, the Court's filing fee, Drs. Zubkov and Pachner's expert fees, counsel's travel expenses, and other miscellaneous expenses. Fees App., Ex. 86 at 1-4. Documentation was provided for the medical record requests, medical literature, and the Court's filing fee, therefore these will be paid in full. I discuss the other requests below.

1. Petitioner's Expert Costs for Dr. Andrew Pachner, M.D.

Dr. Andrew Pachner submitted five expert reports in this case. Exs. 28, 62, 63, 78, 89. Dr. Pachner is requesting compensation at an hourly rate of $500.00 for approximately 39 hours (or 2323 minutes) of work performed. Petitioner has submitted 4 invoices documenting the approximately 39 hours of work performed by Dr. Pachner. Ex. 86 at 62-63, 75-76, 94, 98. Notably, Dr. Pachner's invoice for his last expert report, totaling $5,675.00, was not provided. As Dr. Pachner's last invoice has not been provided, I will defer that request to a final fees application. No award is appropriate without an invoice. *See, e.g.*, *Pickens v. Sec'y of Health & Hum. Servs.*, No. 17-187V, 2020 WL 414442, at *4 (Fed. Cl. Jan. 9, 2020) (denying motion for review of a decision not including an expert's fee in an interim award when the expert's invoice was not readable); *Sabella*, 86 Fed. Cl. at 222 (denying motion for review when special master refrained from compensating an expert for whom an invoice was not submitted).

Regarding Dr. Pachner's hourly rate, no other special master has determined whether his requested hourly rate is reasonable. *See, e.g.*, *Thomas v. Sec'y of Health & Hum. Servs.*, No. 18-1948V, 2023 WL 2155057 (Fed. Cl. Spec. Mstr. Feb. 22, 2023) (deferring on determining Dr. Pachner's expert rate and an award of expert costs because no invoices were filed; "Dr. Pachner's proposed rate is unknown and the reasonableness of his activities cannot be determined."; *cf. Correa v. Sec'y of Health & Hum. Servs.*, No. 15-592V, 2022 WL 2222485 at *3 (Fed. Cl. Spec. Mstr. May 24, 2022) (granting Dr. Pachner's expert fees in full with no specific analysis). These two cases are the only cases Dr. Pachner have offered an opinion in for the Vaccine Program.

Dr. Pachner received his medical degree from Yale University and currently works at the Dartmouth-Hitchcock Medical Center. Ex. 27 at 1. Dr. Pachner is the Murray B. Bornstein Professor of Neurology at the Geisel School of Medicine at Dartmouth. *Id.* at 2. Undoubtably, Dr. Pachner is an extremely well credentialed expert. However, I will defer making a determination on the reasonableness of Dr. Pachner's requested hourly rate until the conclusion of this case when I have had the opportunity to listen to his testimony at the entitlement hearing.

At this juncture, I will award Dr. Pachner's substantiated expert fees, which total $19,358.00, without a determination of the reasonableness of his hourly rate. I defer $5,675.00 to a future application for fees as no invoice has been provided to substantiate this amount.

### 2. Petitioner's Expert Costs for Dr. Alexander Zubkov, M.D., Ph.D.

Petitioner requests an hourly rate of $600.00 for 3.5 hours of work performed, totaling $2,100.00; $500.00 for Dr. Zubkov's review of records; and $350.00 for a conference with Dr. Zubkov. Ex. 86 at 52-53, 58, 101. Although invoices from the Minneapolis Clinic of Neurology were submitted, they did not clearly establish what task was performed by Dr. Zubkov or why he should receive $600 per hour.

Dr. Zubkov received his medical degree from First Leningrad Medical Institute and his Ph.D. from the University of Mississippi Medical Center. Ex. 25 at 1. Dr. Zubkov is board certified in neurology, vascular neurology, and neurocritical care. *Id.* at 2. Dr. Zubkov is also an associate professor of neurology at the University of Minnesota. *Id.* at 3. Dr. Zubkov has not been an expert in the Vaccine Program prior to this case. Similar to Dr. Pachner, Dr. Zubkov is well qualified to provide an expert opinion in the Vaccine Program however his requested hourly rate of $600.00

has been reserved for experts that have a highly specific area of expertise or for experts who have testified frequently in the Vaccine Program. *See*, *e.g.*, *Reinhardt v. Sec'y of Health & Hum. Servs.*, No. 17-1257V, 2021 WL 2373818, at *4-5 (Fed. Cl. Spec. Mstr. Apr. 22, 2021) (awarding Dr. Cestari, one of roughly ten neuro-ophthalmology specialists in the U.S. an hourly rate of $550); *Schultz v. Sec'y of Health & Hum. Servs.*, No. 02-1314V, 2018 WL 1835104, at *3–4 (Fed. Cl. Spec. Mstr. May 24, 2017) (finding a $600 hourly rate too high for "an expert who does not have significant experience with the program"). At this time, I will grant Dr. Zubkov's requested fees, as the total amount requested appears reasonable based on the work performed, but like Dr. Pachner, I will not make a determination as to the reasonableness of Dr. Zubkov's requested hourly rate for the same reasons discussed above.

### 3. Travel Expenses

Documentation of the majority of counsel's travel expenses was provided, with the exception of her May 23, 2017 Southwest flight to Minnesota, totaling $38.49. Despite the fact that no receipt was filed, I will grant this expense as it is documented and a compensable business expense.

### 4. Miscellaneous

Petitioner also requests reimbursement for "Pacer Service Center Research" fees (totaling $3.70), USPS mailings (totaling $76.60), and Worldwide Express shipping expenses (totaling $182.45). Documentation in the form of shipping labels was provided for the USPS and Worldwide Express costs, with the exception of two USPS costs (totaling $15.40). No documentation was provided for Pacer Service Center Research. As these are ordinary business expenses, I will grant the items for which some form of documentation has been submitted in full; therefore, a deduction of $19.10 will be applied to Petitioner's requested costs.

Total deductions: **$5,694.10**
Total costs to be awarded: **$27,321.30**

## III.    Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of interim fee and cost awards, and based on the foregoing, I **GRANT IN PART** Petitioner's application, as follows:

A lump sum in the amount of **$140,947.85**, representing reimbursement of Petitioner's interim attorneys' fees and costs in the form of a check jointly payable to Petitioner and his attorney, Ms. Anne Toale.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[5]

---

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.

**IT IS SO ORDERED.**

<u>**s/ Katherine E. Oler**</u>
Katherine E. Oler
Special Master