# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 17-142V

```
* * * * * * * * * * * * * * * * * * * * * * * *   *
                                                  *
MICHAEL HOWELLS,                                  *
                                                  *
                                                  *
                Petitioner,                       *   Special Master Jennifer A. Shah
                                                  *
                                                  *
v.                                                *
                                                  *
                                                  *
SECRETARY OF HEALTH AND                           *   Filed: May 29, 2026
HUMAN SERVICES,                                   *
                                                  *
                                                  *
                Respondent.                       *
                                                  *
* * * * * * * * * * * * * * * * * * * * * * * *
```

*Anne Carrión Toale*, Mctlaw, Sarasota, FL, for Petitioner.
*Debra A. Filteau Begley*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On January 30, 2017, Michael Howells ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §§ 300aa-10, *et seq.*[2] (the "Vaccine Act" or "Program"), alleging that he developed transverse myelitis ("TM") as a result of the influenza ("flu") and pneumococcal vaccines he received on December 14, 2015. ECF No. 1 ("Pet.") at 1-2.

After filing the petition, Petitioner filed an affidavit and several medical records. Exs. 1-23. On September 17, 2018, Respondent filed a Rule 4(c) Report, contending that entitlement to compensation should be denied. ECF No. 37. Thereafter, the parties filed several rounds of expert

---

[1] Because this Decision contains a reasoned explanation for the action in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

reports and medical literature, and Petitioner filed additional medical records. *See* Exs. 24-76; Exs. A-C  The parties participated in ADR settlement proceedings, during which Petitioner filed additional medical records and Respondent filed an additional expert report. *See* ECF No. 66-88. However, the parties were unable to reach a resolution. *See* ECF No. 88.  Petitioner then filed an additional expert report and medical literature.  Ex. 78-84.

On May 13, 2022, former Special Master Katerine E. Oler scheduled an entitlement hearing for February 21-22, 2024. *See* Non-PDF Scheduling Order dated 5/13/2022.

On August 24, 2022, Petitioner filed an application for interim attorneys' fees and costs, requesting $152,622.30 for work performed from 2017-2022.  ECF No. 97.  Both parties then filed additional expert reports and medical literature.  Exs. 78-92; Ex. D.  On April 20, 2023, Special Master Oler granted Petitioner's application in part, awarding $140,947.85.  ECF No. 103.

The parties filed a joint status report on December 6, 2023, agreeing that the scheduled entitlement hearing for February 2024 should be canceled "to allow further development of the issues" in the case.  ECF No. 109.  The parties then proceeded by retaining additional experts to file reports and medical literature.  Exs. 93-165, 173-81; Exs. E-I.  This case was reassigned to me on August 13, 2024.  ECF No. 117.

On October 23, 2025, Petitioner filed a motion for a Ruling on the Record.  ECF No. 132. Respondent filed a response to Petitioner's motion on March 6, 2026, and Petitioner filed a reply brief on April 21, 2026.  ECF Nos. 141, 146.  The parties agreed that the record was complete on May 22, 2026.  ECF No. 147.

On November 11, 2025, Petitioner filed a second motion for interim attorneys' fees and costs, requesting a total of $206,026.64, comprised of $135,454.50 in attorneys' fees, $64,897.14 in attorneys' costs, and $5,675.00 in expert costs that were deferred in the first interim fees decision.  ECF No. 134 ("Fees App.") at 2.  Respondent filed a response to Petitioner's second motion, deferring to me as to whether Petitioner has met the legal standard for an award of interim attorneys' fees and costs, on December 12, 2025.  ECF No. 136 ("Fees Resp.") at 2.  Petitioner filed a reply brief on December 16, 2025.  ECF No. 137 ("Fees Reply").

I hereby **GRANT IN PART** Petitioner's application and award a total of **$199,053.92** in interim attorneys' fees and costs.

## I.      Legal Standard

### A.  Interim Attorneys' Fees and Costs

The Federal Circuit has held that an award of interim attorneys' fees and costs is permissible under the Vaccine Act. *Shaw v. Sec'y of Health & Hum. Servs.,* 609 F.3d 1372 (Fed. Cir. 2010); *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343 (Fed. Cir. 2008).  In *Cloer*, the Federal Circuit noted that "Congress [has] made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act." *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1361-62 (Fed. Cir. 2012).

In *Avera,* the Federal Circuit stated that "[i]nterim fees are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352. Likewise, in *Shaw,* the Federal Circuit held that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375. *Avera* did not, however, define when interim fees are appropriate; rather, it has been interpreted to allow special masters discretion. *See Avera*, 515 F.3d at 1352; *Kirk v. Sec'y of Health & Hum. Servs.*, No. 08-241V, 2009 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009); *Bear v. Sec'y of Health & Hum. Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013). Special masters have viewed the three *Avera* criteria -- protracted proceedings, costly expert testimony, and undue hardship -- as factors to consider in a flexible balancing test. *Avera*, 515 F.3d at 1352; *see Al-Uffi v. Sec'y of Health & Hum. Servs.*, No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).

The undue hardship inquiry looks at more than just the financial involvement of a petitioner; it also takes into account the expenditures of counsel. *Kirk*, 2009 WL 775396, at *2. Referring to *Avera*, former Chief Special Master Golkiewicz in *Kirk* found that "the general principle underlying an award of interim fees [is] clear: avoid working a substantial financial hardship on petitioners and their counsel." *Id*.

### B.  Good Faith

A petitioner is eligible for an interim award of reasonable attorneys' fees and costs only if the special master finds that the petition was brought in good faith and with a reasonable basis. §15(e)(1); *Avera*, 515 F.3d at 1352; *Shaw*, 609 F.3d at 1372; *Woods v. Sec'y of Health & Hum. Servs*, 105 Fed. Cl. 148, 154 (2012); *Friedman v. Sec'y of Health & Hum. Servs.*, 94 Fed. Cl. 323, 334 (2010); *Doe 21 v. Sec'y of Health & Hum. Servs.*, 89 Fed. Cl. 661, 668 (2009); *Bear*, 2013 WL 691963, at *5; *Lumsden v. Sec'y of Health & Hum. Servs.*, No. 97-588V, 2012 WL 1450520, at *4 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). It "focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

### C.  Reasonable Basis

Unlike the good faith inquiry, an analysis of reasonable basis requires more than just Petitioner's belief in his claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y*

3

*of Health & Hum. Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

Although the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis . . ." *Id.* at 286. The Court in *Chuisano* found that a petition that relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 2019-1596, 971 F.3d 1337, 1346 (Fed. Cir. 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis").

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims. *See Waterman v. Sec'y of Health & Hum. Servs.,* 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury)).

When determining if a reasonable basis exists, a special master may consider a myriad of factors, including "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

4

## II.    Discussion

### A.  Undue Financial Hardship

The Federal Circuit has noted that interim fees "are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352 (Fed. Cir. 2008).  Since Petitioner's first award of interim fees and costs, counsel has filed additional medical records, expert reports, medical literature, and a motion for ruling on the record. *See* Exs. 93-181; ECF No. 132.  I find that Petitioner would suffer undue hardship without an award of interim fees and costs.

### B.  Good Faith and Reasonable Basis

Respondent has not raised any specific objection to Petitioner's good faith or reasonable basis for this claim, and he leaves the determination to my discretion.  Fees Resp. at 2.  I find that the petition was filed in good faith.

As discussed above, the threshold for reasonable basis is much lower than the burden to prove entitlement to compensation, which requires preponderant evidence.  Based on the materials filed by Petitioner thus far, I find that he has maintained a reasonable basis for his claim.

As there is no other reason to deny an award of interim attorneys' fees and costs, I will award interim fees and costs as described below.

### C.  Attorneys' Fees

Petitioner requests a total of $135,454.50 in attorneys' fees for "mctlaw".  Fees App. at 2; Ex. 166 at 26.  Petitioner bears the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1993).

#### 1.  Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11).  In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).  The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[3]

---

[3] The Office of Special Masters Attorneys' Forum Hourly Rate Fee Schedule for 2015 through 2026 can be

Petitioner requests compensation for his counsel, Ms. Anne Toale, at the following rates: $500.00 per hour for work performed in 2022, $535.00 per hour for work performed in 2023, $570.00 per hour for work performed in 2024, and $615.00 per hour for work performed in 2025. Ex. 166 at 26. Petitioner requests compensation for Mr. Benjamin Christian, counsel, at a rate of $345.00 per hour for work performed in 2023. *Id.* Petitioner requests compensation for Ms. Catherine Costigan, counsel, at a rate of $395.00 per hour for work performed in 2024. *Id.* Petitioner requests compensation for Mr. Joseph Vuckovich, counsel, at the following rates: $385.00 per hour for work performed in 2022, $415.00 per hour for work performed in 2023, $445.00 per hour for work performed in 2024, and $490.00 per hour for work performed in 2025. *Id.* Petitioner also seeks compensation for paralegals, ranging from $170.00-$205.00/hour for work performed in 2022-2025. *Id.*

The requested rates for Ms. Toale and her colleagues are consistent with what mctlaw has previously been awarded and are in accordance with the Office of Special Masters' Fee Schedule. *See, e.g., Sheller v. Sec'y of Health & Hum. Servs.*, No. 18-696V, 2025 WL 1166239, at *8 (Fed. Cl. Spec. Mstr. Mar. 27, 2025) (awarding Ms. Toale's requested rates from 2022-2024 and Mr. Christian's requested 2023 rate); *Hinton v. Sec'y of Health & Hum. Servs.*, No. 16-1140V, 2026 WL 776096, at *3 (Fed. Cl. Spec. Mstr. Feb. 13, 2026) (awarding Ms. Toale's requested hourly rates for 2024-2025); *DeOcampo v. Sec'y of Health & Hum. Servs.*, No. 23-319V, 2025 WL 1927580, at *1 (Fed. Cl. Spec. Mstr. June 18, 2025) (awarding Ms. Costigan's requested 2024 rate); *Oquendo Vazquez on behalf of A.R. v. Sec'y of Health & Hum. Servs.*, No. 17-1817V, 2025 WL 3143310, at *4 (Fed. Cl. Spec. Mstr. Oct. 16, 2025) (awarding Mr. Vuckovich's requested hourly rate for 2024-2025 and requested hourly paralegal rates from 2022-2025). Accordingly, I find the requested rates are reasonable and that no adjustment is warranted.

### 2. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). Further, special masters may reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 318 (Fed. Cl. 2008), *aff'd*, No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

A special master need not engage in a line-by-line analysis of a petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (Fed.

---

accessed at: https://www.uscfc.uscourts.gov/osm-attorneys-forum-hourly-rate-fee-schedules.

6

Cl. 2011). Special masters may draw on their experience and judgment to reduce an award of fees and costs to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993). It is within a special master's discretion to make a global reduction to the total amount of fees requested. *See Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("special masters have wide latitude in determining the reasonableness of both attorneys' fees and costs"); *Hocraffer v. Sec'y of Health & Hum. Servs.*, No. 99-533V, 2011 WL 3705153 (Fed. Cl. Spec. Mstr. July 25, 2011), *mot. for rev. denied*, 2011 WL 6292218, at *13 (Fed. Cl. 2011) (denying review of the special master's decision and endorsing "a global – rather than line-by-line – approach to determine the reasonable number of hours expended in this case").

While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26. It is well-established that billing for administrative and clerical tasks is not permitted in the Vaccine Program. *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989).

The overall hours spent on this matter appear to be reasonable; however, a reduction is necessary due to time billed for administrative and clerical tasks. Most of these entries bill between 0.1 and 0.3 hours for receiving and reviewing filing notifications. *See* Ex. 166. Some entries are block billed, meaning non-compensable administrative tasks are indistinguishably billed together with compensable tasks. *Id.* Examples include (but are not limited to):

- November 15, 2022: 0.3 hours billed by Ms. Estrella, paralegal, to "*Review and analyze respondents motion for extension of time and order granting respondents motion for extension of time for action needed*, update case deadlines."

- May 2, 2023: 0.1 hours billed by Ms. Toale to "*Review order.*"

- February 22, 2024: 0.1 hours billed by Ms. Toale to "*Review motion for enlargement.*"

- August 28, 2025: 0.2 hours billed by Ms. Toale to "*Review order.*"

*Id.* (emphasis added). These issues have previously been raised with Ms. Toale and her colleagues, including in this case. *See Cook v. Sec'y of Health & Hum. Servs.*, No. 19-274V, 2025 WL 4658119, at *4 (Fed. Cl. Spec. Mstr. Nov. 21, 2025) (reducing fees by 5% for block billing and billing for administrative tasks); *Henderson v. Sec'y of Health & Hum. Servs.*, No. 23-562V, 2025 WL 2081189, at *2 (Fed. Cl. Spec. Mstr. June 23, 2025) (declining reimbursement for all time billed for administrative tasks); *Howells v. Sec'y of Health & Hum. Servs.*, No. 17-142V, 2023 WL 3750380, at *6 (Fed. Cl. Spec. Mstr. June 1, 2023) (reducing fees by 5% for billing for clerical tasks). Because the tasks at issue were performed over multiple years, billed at different hourly rates, and included administrative tasks and block billing, I will apply a 5% deduction from the requested attorneys' fees. This results in a reduction of $6,772.73.

Accordingly, Petitioner is awarded attorneys' fees in the amount of **$128,681.78**.[4]

### D.  Reasonable Costs

Petitioner requests a total of $70,572.14 for attorneys' costs, consisting of $48.43 for postage; $1,064.90 for legal research; $493.25 for medical literature; $27.70 for UPS; $10.64 for DocuSign services; $31.72 for medical records; $620.00 for radiology images; $29,600.00 for Dr. Bajakian's expert costs; $25,204.50 for Dr. Pachner's expert costs; $5,675.00 in deferred costs for Dr. Pachner; and $7,796.00 for Dr. Bradfute's expert costs.  Fees App. at 2; Ex. 167 at 1-2; Ex. 171.

Petitioner provided adequate documentation for costs relating to legal research, medical literature, medical records, and radiology images. Ex. 167 at 6-51.  I find the costs for these items to be reasonable and award them in full.  For costs related to postage, DocuSign services, and UPS, Petitioner provided documentation that did not include the amount incurred for such services.[5]  *See* Ex. 167.  These costs, however, are normal business expenses and are not unreasonable.  Therefore, I award them in full, but I also remind counsel of the importance of submitting proper documentation in support of claimed costs going forward.  I discuss Petitioner's expert costs below.

1.   Petitioner's Expert Costs for Richard L. Bajakian, M.D.

Petitioner requests $29,600.00 for Dr. Bajakian's expert costs.  *See* Ex. 167.  Dr. Bajakian billed 47.0 hours at an hourly rate of $600.00 for work performed from May 2023 to February 2024 and 2.0 hours at an hourly rate of $700.00 for work performed in October 2024.  *Id.* at 23-24, 37, 55.

Dr. Bajakian has not been awarded an expert rate, as this appears to be only his third case in the Vaccine Program.  *See Guzman v. Sec'y of Health & Hum. Servs.*, No. 22-957V, 2025 WL 1891419, at *3 (Fed. Cl. Spec. Mstr. June 9, 2025) (finding Dr. Bajakian's requested rate and the number of hours expended to be reasonable); *Henningsen v. Sec'y of Health & Hum. Servs.*, No. 21-1101V, 2023 WL 3196251, at *4 (Fed. Cl. Spec. Mstr. May 2, 2023) (deferring expert costs). Dr. Bajakian is a "Harvard trained [n]euroradiologist" that received his medical degree from New Jersey Medical School in 1984.  Ex. 170 at 1; Ex. 138 ("Bajakian CV") at 1.  He is board certified in radiology with a certificate of additional qualifications in neuroradiology, and he has more than 30 years of clinical experience. Ex. 170 at 1; Bajakian CV at 1-3.  Dr. Bajakian appears to be well qualified to provide an expert opinion in the Vaccine Program.

Petitioner filed a 30-page expert report from Dr. Bajakian in this case.  Ex. 137.  In his

---

[4] This total reflects Petitioner's $135,454.50 request for attorneys' fees minus the $6,772.73 reduction for billing for administrative tasks. ($135,454.50 - ($135,454.50 x 0.05) = $128,681.78).

[5] For example, Petitioner's counsel's cost invoice includes a cost of $7.60 for "08/14/2023 USPS Letter to expert," but only the only supporting documentation counsel provided is a copy of the USPS generated shipping label addressed to Dr. Zubkov, which does not indicate the costs for the mailing service. *Compare* Ex. 167 at 1 *with* Ex. 167 at 9.

report, Dr. Bajakian provided medical background, discussed Petitioner's case and medical imaging, opined on diagnosis, referenced medical literature, and responded to Respondent's experts. *Id.* The invoices that Petitioner filed for Dr. Bajakian show that he reviewed Petitioner's medical history, conducted medical literature research, drafted and revised his report, reviewed Respondent's expert reports and medical literature, and teleconferenced with counsel. Ex. 167 at 23-24, 37, 55.

I find the overall amount billed by Dr. Bajakian appears to be reasonable; however, a minor reduction in his requested hourly rate is necessary due to what appears to be a mid-year rate increase in 2024. Dr. Bajakian billed $600.00 per hour for work performed from May 2023 to February 2024; however, for work performed in October 2024 he billed $700.00 per hour. Ex. 167 at 23-24 (Dr. Bajakian's 2023 invoice billing at a rate of $600.00 per hour), 37 (Dr. Bajakian's invoice for work performed in February 2024 billing at a rate of $600.00 per hour), 55 (Dr. Bajakian's invoice for work performed in October 2024 billing at a rate of $700.00 per hour). As with attorneys, it is generally not the practice in the Vaccine Program to afford mid-year rate increases to experts. *See K.K. v. Sec'y of Health & Hum. Servs.*, No. 17-621V, 2026 WL 880578, at *4 (Fed. Cl. Spec. Mstr. Mar. 5, 2026); *Martinez v. Sec'y of Health & Hum. Servs.*, No. 16-738V, 2022 WL 1210556, at *5 (Fed. Cl. Spec. Mstr. Mar. 29, 2022). Although Dr. Bajakian's expert rate has not yet been set, I see no reason to deviate from the general practice regarding mid-year rate increases. Accordingly, I find that Dr. Bajakian's requested rate of $600.00 per hour is reasonable for his work performed in 2023 and *all of* 2024.[6] This results in a $200.00 reduction.[7] Accordingly, Petitioner is awarded $29,400.00 for Dr. Bajakian's expert costs.

### 2. Petitioner's Expert Costs for Andrew R. Pachner, M.D.

Petitioner requests $30,879.50 for Dr. Pachner's expert costs, consisting of $25,204.50 for work completed from 2022-2025 and $5,675.00 for costs that Special Master Oler deferred in her decision on Petitioner's first motion for interim fees. Fees App. at 1-2; Ex. 167 at 1-5, 29-31, 34-35, 53-54; Ex. 171; *see* ECF No. 103 at 9.

Dr. Pachner has billed approximately 82.50 hours at an hourly rate of $500.00 for work performed from 2021-2025.[8] Ex. 167 at 3-5, 29-31, 34-35, 53-54; Ex. 171 at 1. Dr. Pachner has been awarded his hourly rate by other special masters, and I see no reason to disturb his request. *See Hicks v. Sec'y of Health & Hum. Servs.*, No. 19-1139V, 2026 WL 1347642, at *4 (Fed. Cl. Spec. Mstr. Apr. 17, 2026); *Thomas v. Sec'y of Health & Hum. Servs.*, No. 18-1948V, 2024 WL 4442050, at *4 (Fed. Cl. Spec. Mstr. Aug. 6, 2024). I find the overall number of hours expended

---

[6] I decline to set Dr. Bajakian's expert rate at this time. I am merely determining that the overall hours and amount requested in this motion, with a minor reduction, are reasonable.

[7] Applying Dr. Bajakian's $600.00 requested rate for the work performed in October 2024 results in a $200.00 reduction ($700.00 - $600.00 = $100.00 x 2.0 hrs. billed in October 2024 = $200.00 reduction).

[8] Dr. Pachner billed approximately 71.15 hours for work performed in 2022-2025, as well as 11.35 hours for work performed in 2021, on which Special Master Oler had deferred ruling in her first decision on interim fees. Ex. 167 at 3-4, 30, 34, 53; Ex. 171 at 1.

9

by Dr. Pachner to be reasonable, and I will award his expert costs in full.

### 3.   Petitioner's Expert Costs for Steven B. Bradfute, Ph.D.

Petitioner requests $7,796.00 for Dr. Bradfute's expert costs.  Ex. 167 at 32-33.  Dr. Bradfute billed 19.49 hours at an hourly rate of $400.00 for work performed from 2023-2024.  *Id.* The hourly rate requested by Dr. Bradfute is consistent with what he has previously been awarded by other special masters, and I see no reason to disturb his request.  *See Zacharski v. Sec'y of Health & Hum. Servs.*, No. 21-317V, 2026 WL 963561, at *3 (Fed. Cl. Spec. Mstr. Mar. 10, 2026); *Thomas*, 2024 WL 4442050, at *3.  I find the overall number of hours expended by Dr. Bradfute to be reasonable, and I will award his expert costs in full.

I award Petitioner a total of **$70,372.14** in attorneys' costs.[9]

## III.   Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of awards of interim attorneys' fees and costs, and based on the foregoing, I **GRANT IN PART** Petitioner's application.  Petitioner is awarded interim attorneys' fees and costs in the total amount of **$199,053.92,** as follows:

- A lump sum in the amount of **$199,053.92**, representing reimbursement of Petitioner's interim attorneys' fees and costs,[10] to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[11]

**IT IS SO ORDERED.**

**s/ Jennifer A. Shah**
Jennifer A. Shah
Special Master

---

[9] Petitioner is awarded $48.43 for postal services, $1,064.90 for legal research services, $493.25 for medical literature, $27.70 for UPS services, $10.64 for DocuSign services, $31.72 for medical records, $620.00 for radiology images, $29,400.00 for Dr. Bajakian's expert costs, $30,879.50 for Dr. Pachner's expert costs, and $7,796.00 for Dr. Bradfute's expert costs.

[10] The award is for $128,681.78 in attorneys' fees and $70,372.14 in attorneys' costs, totaling $199,053.92.

[11] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.